IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CAROLINA CASUALTY INSURANCE      §
COMPANY,                         §
                                 §
     Plaintiff-                  §
     counterdefendant,           §
                                 §  Civil Action No. 3:07-CV-1783-D
VS.                              §
                                 §
JAMES E. SOWELL, et al.,         §
                                 §
     Defendants-                 §
     counterplaintiffs.          §

MEMORANDUM OPINION
AND ORDER

In this insurance coverage dispute, the court must decide on
the parties' cross-motions for summary judgment whether the
insurer, plaintiff-counterdefendant Carolina Casualty Insurance Co.
("Carolina"), has a duty under a management liability insurance
policy (the "Policy") to defend four underlying lawsuits (the
"Underlying Lawsuits"). This question turns on whether three
Policy exclusions bar coverage. Concluding that Carolina has
established beyond peradventure that it has neither a duty to
defend nor a duty to indemnify in the Underlying Lawsuits, the
court grants Carolina's motion for summary judgment, denies
defendants-counterplaintiffs' motions for partial summary judgment,
and enters judgment in favor of Carolina.

Carolina brings this suit against individual defendant James E. Sowell ("Sowell")[1] and individual defendant-counterplaintiff Jeffrey Ellis ("Ellis"), and corporate defendants-counterplaintiffs James Sowell Co., L.P. ("Sowell LP"), Union Industrial Gas & Supply, Inc. ("Union"), DGS, L.L.C. ("DOUS"),[2] and Gas Holdings, Inc. ("GHI") (collectively, the "Corporate Defendants"), who are insureds under the Policy. Carolina seeks a declaration that it has neither a duty to defend nor a duty to indemnify in the Underlying Lawsuits. All defendants except Sowell counterclaim seeking a declaration that Carolina has a duty to defend and indemnify, and alleging that Carolina is liable for breach of contract, breach of the duty of good faith and fair dealing, violations of Chapters 541 and 542 of the Texas Insurance Code, and damages under § 17.50 of the Texas Business & Commerce Code based on alleged deceptive insurance practices that violated Chapter 541.

The Underlying Lawsuits were filed in the aftermath of Hurricane Katrina, and they arise out of a dispute concerning a leased property located in New Orleans (the "Leased Property") that was damaged in the hurricane. At the time of the hurricane,

---

[1] All defendants except Sowell assert counterclaims against Carolina. *See infra* note 21.

[2] DGS, L.L.C. was formerly known as Doussan Gas & Supply, L.L.C. Defendants refer to this party as DOUS, L.L.C., the name by which it is now known. For clarity, the court will refer to this defendant as "DOUS."

Doussan Properties, L.L.C. ("DPL") had leased the property to Union, DOUS, and GHI.

In the first lawsuit at issue, DPL sued Union, DOUS, and GHI in the United States District Court for the Eastern District of Louisiana. *See Doussan Props., L.L.C. v. Union Indus. Gas & Supply, Inc.*, No. 06-4167 (E.D. La. filed Aug. 9, 2006) (the "*Federal Lawsuit*"). In the *Federal Lawsuit* DPL asserted three principal allegations. First, it alleged that the defendants failed to secure sufficient insurance for the Leased Property, as they were required to do under the lease. DPL asserted that, because of this breach of the lease, it was entitled to the difference between the amount received under the insurance in effect at the time of the loss and the insured value of the property, as well as attorney's fees and court costs. Second, DPL alleged that the lessees refused to remove their personal property from the Leased Property, as required under the lease. Third, DPL alleged that the lessees failed to return the Leased Property in the condition in which they took possession, as required by the lease and Louisiana Civil Code Articles 2719-20. Based on the second and third allegations, DPL asserted that it was entitled to compensation for loss of rents or, alternatively, damages for the cost of removing the lessees' personal property, the inability to lease or use the property, and additional damage caused to the building. The *Federal Lawsuit* was dismissed for lack of subject

matter jurisdiction, but defendants still seek coverage for costs expended defending this suit.

Following dismissal of the *Federal Lawsuit*, DPL filed a similar suit against Union, DOUS, and GHI in the Civil District Court for the Parish of Orleans, State of Louisiana, and that lawsuit was removed to the United States District Court for the Eastern District of Louisiana. *See Doussan Props., L.L.C. v. Doussan Gas & Supply, L.L.C.*, No. 07-5508 (E.D. La. removed Sept. 11, 2007) (the "*Orleans Parish Lawsuit*"). In the *Orleans Parish Lawsuit* DPL asserts the same allegations against the lessees as it did in the *Federal Lawsuit*.[3] It alleges in the alternative that the lessees' failure to secure adequate insurance for the Leased Property constitutes negligence, and it asserts that Union, DOUS, and GHI are liable for the difference between the insurance proceeds received and the insured value of the Leased Property. DPL also avers that Ellis, as principal manager of the three lessees, breached a duty to DPL by intentionally and/or negligently refusing to ensure that adequate insurance was obtained, as the lease required.

DOUS later sued DPL in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. *See Doussan Gas &*

---

[3]DPL asserts, however, that the lessees were required under the lease and Louisiana Civil Code Art. 2683, as opposed to Arts. 2619-20, to return the Leased Property in the condition in which they took possession. DPL also alleges that the alternative damages it requests are recoverable under Art. 2687.

*Supply, L.L.C. v. Doussan Props., L.L.C.*, No. 645-011 (24th Dist. Ct., Jefferson Parish, La. filed May 17, 2007) (the "*Jefferson Parish Lawsuit*"). In the *Jefferson Parish Lawsuit* DOUS seeks a declaratory judgment determining its rights and status under the lease. In the alternative, but only if it is determined that DOUS failed to obtain sufficient insurance, DOUS seeks a declaration that the DOUS officers who knew of the insufficiency of the obtained insurance breached a fiduciary duty owed to DOUS.

In the final Underlying Lawsuit, defendant Sowell filed a shareholder derivative action on behalf of DOUS against Leonard Doussan III ("Doussan III"), Leonard Doussan, Jr. ("Doussan Jr."), Ellis, and DOUS in the 68th Judicial District Court of Dallas County, Texas. *See Sowell v. Doussan*, No. 07-10557 (68th Dist. Ct., Dallas County, Tex. filed Sept. 10, 2007) (the "*Dallas County Lawsuit*"). Sowell alleges, in relevant part, that Doussan III, Doussan Jr., and Ellis breached fiduciary duties owed to DOUS. The claims concern the failure to provide adequate insurance for the Leased Property and DOUS's mismanagement of the litigation concerning the Leased Property. Subsequently, another DOUS shareholder, Robert Welsh ("Welsh"), intervened in the *Dallas County Lawsuit*, also alleging a breach of fiduciary duty by Ellis.

The Policy at issue in this suit is a management liability insurance policy issued by Carolina to Sowell LP and covering the period January 16, 2006 to January 16, 2007. The Policy insures

- 5 -

Sowell LP and several "additional insured entities," including Union, DOUS, and GHI. Coverage A of the Policy provides coverage for the directors and officers of an insured entity when they face a claim arising out of any wrongful act. "Coverage A. Directors and Officers Liability Insurance," provides:

This Policy shall pay the Loss of:

1. each and every Director or Officer of the Insured Entity arising from any Claim first made against the Directors or Officers during the Policy Period or the Extended Reporting Period (if applicable) for any Wrongful Act, except and to the extent that the Insured Entity has indemnified the Directors or Officers.

2. the Insured Entity arising from any Claim first made against the Directors or Officers during the Policy Period or the Extended Reporting Period (if applicable) for any Wrongful Act, but only to the extent that the Insured Entity has Indemnified the Directors or Officers for such Loss as permitted by law.

Corporate Ds. July 21, 2008 App. 7.[4]

Coverage B of the Policy covers an insured entity itself when it faces a claim arising out of a wrongful act. "Coverage B. Corporate Liability Insurance," provides: "This Policy shall pay the Loss of the Insured Entity arising from any Claim first made against the Insured Entity during the Policy Period or the Extended

<hr>

[4]Because the Corporate Defendants have filed appendixes in support of both their motion for partial summary judgment and their response to Carolina's motion for summary judgment, the court for clarity will refer to the appendix by the date filed.

Reporting Period (if applicable) for any Wrongful Act." *Id.* The Policy provides that all claims based upon, or arising out of, the same wrongful act or related wrongful acts are considered a single claim. *See id.* at 13.

Policy coverage is subject to three pertinent exclusions. First, the exclusion in § IV.N (the "Contract Exclusion") provides that Carolina

> shall not be liable to make any payment for Loss in connection with a Claim made against any insured . . . based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any oral or written contract or agreement. This exclusion shall not apply to Coverage A. or Coverage C., in the event that such liability would have attached to an Insured in the absence of the oral or written contract or agreement, or in the event a claimant alleges a breach of implied contract.

*Id.* at 10, 12.

Second, the exclusion in § IV.D.2 (the "Property Damage Exclusion") provides that Carolina is not liable for loss in connection with a claim made against any insured for "damage to or destruction of any tangible property, including the loss of use thereof." *Id.* at 11.

Third, the exclusion in § IV.F (the "Insured v. Insured Exclusion") provides that Carolina is not liable for loss in connection with a claim made against any insured "by, on behalf of, or in the right of the Insured Entity, or by any Directors or Officers." *Id.* The Insured v. Insured Exclusion does not apply,

however, to "any derivative action by any security holder of the Insured Entity, but only if such Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any Insured or the Insured Entity." *Id.*

Defendants notified Carolina of the Underlying Lawsuits and requested coverage and a defense. Carolina has denied coverage and has declined to provide a defense, asserting that coverage is precluded by the three Policy exclusions.

Carolina seeks summary judgment declaring that it has neither a duty to defend nor a duty to indemnify defendants in the Underlying Lawsuits, and dismissing defendants' counterclaims. The Corporate Defendants move for partial summary judgment dismissing Carolina's declaratory judgment action and declaring that Carolina has a duty to defend them in the Underlying Lawsuits. Defendant Ellis also seeks partial summary judgment and joins the Corporate Defendants' motion. Because the parties' motions for summary judgment address the same issues, the court will consider them together.

II

It is undisputed that Texas law applies in this case. "In Texas, the duty to defend and duty to indemnify are distinct and separate duties creating distinct and separate causes of action." *Am. Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153 (Tex.

App. 1990, writ dism'd w.o.j.). The duty to defend is "broader than the duty to indemnify." *E & L Chipping Co. v. Hanover Ins. Co.*, 962 S.W.2d 272, 274 (Tex. App. 1998, no pet.). "The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) (citation and internal quotation marks omitted).

Texas follows the "eight-corners" rule, under which the court looks only to the third-party plaintiff's pleadings and the provisions of the insurance policy in determining whether an insurer has a duty to defend. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Neither facts outside the pleadings nor the truth or falsity of the allegations should be considered, and the allegations against the insured should be "liberally construed in favor of coverage." *Id.* Under the "eight-corners" rule,

> [i]f the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend. If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend, but we resolve all doubts regarding duty to defend in favor of the duty.

*Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006). "If an insurer has a duty to defend any portion of a suit, the

insurer must defend the entire suit." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 395 (5th Cir. 2001). Moreover, the parties agree that the Underlying Lawsuits arise out of related wrongful acts and therefore constitute a single claim under the Policy. Thus if any claim asserted in the Underlying Lawsuits is potentially covered under the Policy, Carolina has a duty to defend the Underlying Lawsuits in their entirety.

The insured has the burden of showing that a claim is potentially within the scope of policy coverage. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing Tex Ins. Code Ann. art. 21.58(b) (Vernon Supp. 1997)). The insurer, however, bears the burden of establishing that "the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Id.* "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). If an exclusion is ambiguous, the court must adopt the interpretation urged by the insured as long as it is reasonable. *See id.* at 371 (citing *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)). "These rules favoring the insured, however, are applicable only when there is an ambiguity in the policy; if the exclusions in

question are susceptible to only one reasonable interpretation, then these rules do not apply." *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998) (applying Texas law). A policy provision, such as an exclusion, is ambiguous if it is susceptible to more than one reasonable interpretation, but the fact that the parties apply the exclusion differently does not necessarily render it ambiguous. *See id.; Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 263 (Tex. App. 2001, no pet.). "Courts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even though the insured may suffer an apparent harsh result as a consequence." *Ohio Cas. Group of Ins. Cos. v. Chavez*, 942 S.W.2d 654, 658 (Tex. App. 1997, writ denied) (quoting *Vest v. Gulf Ins. Co.*, 809 S.W.2d 531, 533 (Tex. App. 1991, writ denied)).

The parties' summary judgment burdens depend on whether they are addressing a claim or defense for which they will have the burden of proof at trial. To be entitled to summary judgment on a matter for which it will have the burden of proof, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). The court has noted that the "beyond peradventure" standard is "heavy." *See, e.g., Cont'l Cas. Co. v. St. Paul Fire*

& *Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.).

When the summary judgment movant will not have the burden of proof at trial, it need only point the court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court first concludes that the *Jefferson Parish Lawsuit* contains no claim potentially covered under the Policy. Defendants have the burden of showing that a claim is potentially within the Policy's scope. *Northfield*, 363 F.3d at 528. In the *Jefferson Parish Lawsuit* DOUS, an insured entity under the Policy, sued DPL,

seeking a declaratory judgment determining its rights and status under the lease. Coverage B of the Policy, which provides "Corporate Liability Insurance," states: "This Policy shall pay the Loss of the Insured Entity arising from any Claim first made *against the Insured Entity* during the Policy Period . . . for any Wrongful Act." Corporate Ds. July 21, 2008 App. 7 (emphasis added). It is undisputed that the claims in the *Jefferson Parish Lawsuit* are made *by* the insured entity, DOUS, not *against* the insured entity. Consequently, the claims asserted in the *Jefferson Parish Lawsuit* are not potentially covered under the Policy.[5]

IV

Defendants have shown, and Carolina does not dispute, that at least one claim asserted in each of the three remaining Underlying Lawsuits is potentially within the scope of the Policy.[6] Because defendants have met this burden, for Carolina to establish that it has no duty to defend, it must show that the plain language of one or more policy exclusions bars coverage of all claims. *See*

_____

[5]Defendants do not even contend that the *Jefferson Parish Lawsuit* contains a claim against an insured. To the extent the lawsuit could be interpreted as containing a claim against DOUS' officers, however, the claim clearly falls within the Policy's Insured v. Insured Exclusion, which the court addresses *infra* at § VI.

[6]For example, defendants have shown that claims in each of the three remaining Underlying Lawsuits are potentially covered under Coverage B, which provides: "This Policy shall pay the Loss of the Insured Entity arising from any Claim first made against the Insured Entity during the Policy Period . . . for any Wrongful Act." Corporate Ds. July 21, 2008 App. 7.

- 13 -

*Northfield*, 363 F.3d at 528.

The court first analyzes the claims asserted in the *Orleans Parish Lawsuit*. Defendants contend that, at the very least, the claims for negligence, statutory violations, lost rents, and costs of property removal are not excluded. Carolina argues that both the Contract Exclusion and the Property Damage Exclusion preclude coverage.

A

The Contract Exclusion precludes coverage of claims made against an insured "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any oral or written contract or agreement."[7] Corporate Ds. July 21, 2008 App. 12. The court concludes that the Contract Exclusion is unambiguous, and it gives its terms their plain meaning.

Defendants contend that the court must adopt their interpretation of the exclusion, but they do not demonstrate how

_____

[7]The Contract Exclusion does not apply, however, "to Coverage A. or Coverage C., in the event that such liability would have attached to an Insured in the absence of the oral or written contract or agreement, or in the event a claimant alleges a breach of implied contract." Corporate Ds. July 21, 2008 App. 12. Coverage A involves claims against Directors and Officers. Coverage C involves claims arising from wrongful employment acts. With the exception of the claim against Ellis, the claims in the *Orleans Parish Lawsuit* pertain to Coverage B, i.e., claims against the insured entities themselves. Therefore, the exception to the exclusion does not apply. And regarding the claim against Ellis, the court holds below that such liability would not attach to him in the absence of the lease contract. *See infra* § IV(B)(6).

the Contract Exclusion is susceptible to more than one reasonable interpretation.[8] *See Gore Design*, 538 F.3d at 370 (holding that court must adopt insured's interpretation of an ambiguous exclusion). Defendants likewise fail to explain clearly what their interpretation of the exclusion is, other than to argue that it does not include any of the claims asserted in the *Orleans Parish Lawsuit*. They appear to maintain that the Contract Exclusion should apply only to breach of contract claims, which is an interpretation that the Contract Exclusion's plain language will not support.

In addition to proffering an unclear interpretation of the Contract Exclusion, defendants argue that Carolina's interpretation is overly broad, and that Carolina's interpretation of the phrase "arising out of" is erroneous. Carolina contends that Texas courts interpret the phrase "arising out of" to require only a "but for" causal connection, which is broader than direct or proximate causation. Carolina primarily relies on two Texas cases for this assertion: *Utica National Insurance Co. of Texas v. American Indemnity Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("This Court has held that 'arise out of' means that there is simply a 'causal connection or relation,' which is interpreted to mean that there is

---

[8]As discussed below, defendants do dispute Carolina's interpretation of the phrase "arising out of," but they do not offer an opposing interpretation. Moreover, the court is not relying on Carolina's interpretation of the phrase.

but for causation, though not necessarily direct or proximate causation." (internal citation omitted)), and *DaimlerChrysler Insurance Co. v. Apple*, 265 S.W.3d 52, 68 (Tex. App. 2008, pet. filed) ("The term 'arising out of' is very broad, requiring only a 'but for' causal connection, not direct or proximate causation[.]").  Both of these cases interpret the phrase in the context of a policy exclusion.[9]  Defendants neither explain what they think "arising out of" means nor do they cite Texas cases offering a different interpretation of the phrase.  They simply argue that Carolina's "but for" interpretation is too broad, an argument that does not show that the phrase is ambiguous.

It is clear that, under Texas law, the phrase "arising out of" means a causal connection.  But to decide whether the claims asserted in the *Orleans Parish Lawsuit* fall within the Contract Exclusion, the court need not resolve whether the phrase equates precisely to "but for" causation.  Nor need the court undertake an analysis of the meaning and scope of "but for" causation in the context presented here.  This is because the claims at issue bear a close causal connection to the lease, not a remote or vague connection.

---

[9]Additionally, in interpreting a policy exclusion under Texas law, the Fifth Circuit stated: "[t]his court has held that the words 'arising out of,' when used within an insurance policy, are 'broad, general, and comprehensive terms effecting broad coverage.'"  *Am. States Ins. Co.*, 133 F.3d at 370 (footnote omitted) (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951)).

Moreover, the Contract Exclusion applies not only to claims "arising out of" a contract, but to claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any oral or written contract or agreement." Corporate Ds. July 21, 2008 App. 12. Defendants do not even address, much less dispute, the plain meaning of these other phrases, which clearly reflect that the exclusion applies pervasively to claims that are causally connected to written contracts, such as leases. Essentially, in the context of this case, if a claim could not exist without the lease, it is excluded from coverage by the Contract Exclusion.

Defendants also contend that Carolina's interpretation of the Contract Exclusion is overly broad because it would bar coverage of any claims between the landlord and defendants simply because their relationship is a result of defendants' presence on the Leased Property.[10] But while such an interpretation *would* be overly broad,

_____

[10]Defendants' argument is demonstrated in the following passage:

> Under Carolina's overly broad "but for" interpretation, the fact that the Defendants were residing at the property pursuant to a written lease would serve as a bar of any claims between the landlord and the Defendants in the Underlying Lawsuits, including negligence claims, intentional torts, wrongful acts committed by Defendants' officers and directors, and even claims based on the lack of a contract or arising only after the lease no longer existed. Indeed, under Carolina's interpretation, so long as any plaintiff's

this does not appear to be Carolina's reading of the Contract Exclusion, and it is not the court's. The Contract Exclusion bars coverage of the claims between DPL and defendants, not because *their relationship* arose out of a lease contract, but because *the claims* DPL asserts arise out of the lease contract. This interpretation is narrower than the purported interpretation that defendants challenge. This distinction is illustrated by *Admiral Insurance Co. v. Briggs*, 264 F.Supp.2d 460 (N.D. Tex. 2003) (Godbey, J.), which the court addresses next.

Defendants argue that Carolina's interpretation is inconsistent with *Admiral Insurance Co.*, which applied a nearly identical exclusion under Texas law. In *Admiral Insurance Co.* the insured's former landlord sued it for, *inter alia*, stock fraud, alleging that the insured made material misrepresentations concerning its future success in order to convince the landlord to accept the insured's stock instead of cash for payment on the lease. *Id.* at 462-63. The insured contended that the stock fraud claim fell within the contract exclusion because it "involved" the lease contract. *Id.* Judge Godbey rejected this argument. He emphasized that the terms of the exclusion as a whole, including

_____

relationship with the Defendants arose as a result of Defendants' presence on the leased property, any claim against Defendants would be barred from coverage.

Corporate Ds. Resp. Br. 10.

the "involving" language, required a "causal relationship between the contract and the claim." *Id.* at 463. He concluded that "[t]he lease contract did not cause the stock fraud claim, it simply provided the context in which the stock fraud took place." *Id.* Defendants argue that the lease in the instant case, like the lease in *Admiral Insurance Co.*, merely provides the context for the claims asserted in the *Orleans Parish Lawsuit*.[11]

Carolina contends that the claims asserted in the *Orleans Parish Lawsuit* are clearly distinguishable from the stock fraud claim in *Admiral Insurance Co*. Whereas the stock fraud claim could exist independent of any lease, Carolina argues that the claims in the *Orleans Parish Lawsuit* could not exist independent of the lease. It argues that the lease does not merely provide the context for the claims, but the claims are based on the lease itself.

As demonstrated below, the court also concludes that the lease provides more than context for the claims asserted in the *Orleans Parish Lawsuit*. All of the claims are causally connected to the lease contract and could not exist without the lease. They are all clearly based upon, arise out of, result from, are in consequence

_____

[11]This is not an instance where the court must adopt the insured's interpretation. This is a dispute over the application of another case's holding, not over an alleged ambiguity in a policy exclusion. *See Gore Design*, 538 F.3d at 370 (holding that court must adopt insured's interpretation of an ambiguous exclusion).

of, or involve the lease.

B

The court now addresses the individual claims asserted in the *Orleans Parish Lawsuit*. It applies the plain language of the Contract Exclusion and draws all reasonable inferences in favor of defendants. *See Gore Design*, 538 F.3d at 370.

1

The first claim DPL asserts against Union, DOUS, and GHI in the *Orleans Parish Lawsuit* is for money damages for failing to secure adequate insurance on the Leased Property. DPL alleges that the lessees were contractually liable under the terms of the lease when Hurricane Katrina damaged the Leased Property. It avers that the lease required that they insure the Leased Property against fire, flood, and windstorm damage for an amount not less than 90% of the value of the building and improvements on the Leased Property, but that the lessees failed to obtain the required amount of insurance. This is a breach of contract claim that is clearly based on the lease and falls within the Contract Exclusion.

2

In a related and alternative claim, DPL alleges that the lessees negligently failed to obtain adequate insurance. Defendants contend that this claim does not fall within the Contract Exclusion because "[t]his claim for negligence, by its very nature, asserts a legally imposed duty to obtain adequate

- 20 -

insurance that exists apart from any contract." Corporate Ds. Resp. Br. 16-17. Carolina argues that it is immaterial that defendants have fashioned this claim as one for negligence. It contends that, although the claim sounds in tort, it still arises out of the lease. Carolina maintains that any duty to purchase adequate insurance covering the Leased Property arose only from the lease. Carolina cites *King Chapman & Broussard Consulting Group, Inc. v. National Union Fire Insurance Co.*, 171 S.W.3d 222, 228-29 (Tex. App. 2005, no pet.), in which the court held that a fiduciary duty claim sounding in tort fell within a similar contract exclusion because the duty was expressly created by a divorce contract.

The court holds that the Contract Exclusion clearly precludes coverage for DPL's negligence claim. The duty to obtain insurance on the Leased Property arises directly and exclusively from the terms of the lease. The fact that DPL framed its claim as one for "negligence" is not determinative. The court must consider the facts DPL alleged rather than the legal theories asserted. *See Utica Lloyd's*, 38 S.W.3d at 264; *see also King*, 171 S.W.3d at 228-29; *GE HFS Holdings, Inc. v. Nat'l Union Fire Ins. Co.*, 520 F.Supp.2d 213, 229 (D. Mass. 2007) (citing *King* and holding that "[t]he fact that the [underlying] claim sounds in tort as opposed to contract is not controlling[.]"). "Artful pleadings of facts cannot bring excluded claims back within the policy's coverage."

*Utica Lloyd's*, 38 S.W.3d at 264 (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141-42 (Tex. 1997)).  The facts that DPL alleges are that the lease required the lessees to obtain adequate insurance for the Leased Property, and that they failed to do so.  According to the pleaded facts, the duty to obtain insurance arose directly and exclusively from the lease.  This negligence claim therefore falls within the scope of the Contract Exclusion.

3

DPL also alleges in the *Orleans Parish Lawsuit* that it is entitled to compensation for loss of rents because the lessees failed to remove their personal property from the Leased Property. It avers that ¶ 17 of the lease provides: "Upon the termination or expiration of the Lease Agreement, if Lessor so requests in writing, Lessee shall promptly remove all of its personal property placed in or about the Premises by Lessee."  P. Compl. Ex. D ¶ XIV. DPL then asserts that it provided the required written notice, and that the lessees refused to remove their personal property from the premises, which has limited its ability to lease the property.

Defendants first argue that this claim does not fall within the Contract Exclusion because it is based on the *absence* of a lease, which had already been terminated when the claim arose. Although it is true that the damages of lost rents did not arise until the lease was terminated and DPL actually lost rents, it does

not follow that the claim is not based on the lease.  Paragraph 17
of the lease explicitly governs the removal of personal property
following termination of the lease, and DPL alleges that the
lessees breached this provision.  This is a breach of contract
claim, and the fact that DPL seeks lost rents as damages does not
change this.

Defendants also argue that the duty to remove property from
the premises of another is one that exists independent of a
contract.  They contend that, in Louisiana, this duty is enforced
by a claim for trespass.  Defendants then argue that the Contract
Exclusion should not be applied when the duty of the insured is a
tort duty that exists independent of a contract.  The court holds
that this reasoning is inapplicable in the context of this claim.

First, although there may be a duty independent of contract to
remove property from the premises of another and not to trespass in
some circumstances, it is not implicated by the facts alleged in
the *Orleans Parish Lawsuit*.  DPL's allegations are that the lessees
acquired personal property while occupying the Leased Property, and
that they failed to remove their personal property, as the lease
required.  The duty to remove property arose under the terms of the
lease and depended on a written request from DPL; it was not a duty
existing independent of the lease.  DPL does not mention trespass
in its complaint, and although the court must construe the
complaint liberally in favor of coverage, the complaint cannot be

interpreted to allege a claim for trespass.

Second, assuming *arguendo* that the lessees had a duty independent of the lease to remove their personal property, the Contract Exclusion would still apply. Defendants argue that the Contract Exclusion should not apply when the duty of an insured is a tort duty that exists independent of a contract, but this contention is inconsistent with the terms of the Contract Exclusion. The exclusion provides that it does not apply to Coverage A or Coverage C if the liability would attach to the insured in the absence of the contract. This exception to the exclusion does not apply, however, to Coverage B, which covers claims against insured entities and is the coverage that applies to this claim.[12] Thus the claim for lost rents due to the lessees' failure to remove their personal property is based on the lease and clearly falls within the Contract Exclusion.

4

DPL also alleges that the lessees failed, as required under the lease and La. Civ. Code Ann. art. 2683, to return the Leased Property in the same condition in which they took possession at the lease inception. The alleged violation of the lease terms is simply a breach of contract claim. And the allegation that the lessees violated the same requirement under Art. 2683 also falls

---

[12]DPL asserts this claim for lost rents against Union, DOUS, and GHI, not against Ellis.

within the Contract Exclusion. Article 2683 specifies a lessee's principal obligations and provides that "[t]he lessee is bound . . . [t]o return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter." La. Civ. Code Ann. art. 2683. Defendants argue that this statutory claim is not barred by the Contract Exclusion because that exclusion does not clearly and unambiguously express an intent to exclude coverage of statutory claims. But the fact that the Contract Exclusion is silent concerning the exclusion of legal theories does not mean that it does not clearly and unambiguously exclude a specific claim. The Contract Exclusion bars coverage of claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" a contract, regardless of whether they take the form of a breach of contract claim, a tort claim, or a statutory claim. Article 2683 specifies a lessee's statutory obligations, and the court cannot conclude that the duty to return leased property in a certain condition at the termination of the lease does not result from or involve the lease itself.

As indicated above, this claim is inherently different from the stock fraud claim at issue in *Admiral Insurance Co.* In *Admiral Insurance Co.* Judge Godbey held that the lease merely provided the context for the stock fraud claim. *Admiral Insurance Co.*, 264

F.Supp.2d at 463.  The insured had a duty not to commit stock fraud regardless of whether the victim was its landlord.  Here, the lease is not merely contextual; it provides the basis for the claim.  There can be no claim under Art. 2683 unless there is a lease.  It is the existence of the lease that imposes the statutory obligations on the lessee.[13]

Defendants also argue that, if the Contract Exclusion bars these statutory claims, the Policy is rendered meaningless.  They maintain that all claims would be barred as long as they accrued against lessees while they occupied the Leased Property.  The court disagrees.  The fact that the lessees occupied the Leased Property or were in a landlord-tenant relationship with DPL does not bring DPL's claims within the Contract Exclusion.  The claims are excluded because they directly result from the lease.  There are many claims that could be asserted by a lessor against a lessee that would not fall within the Contract Exclusion.  An obvious

---

[13]Moreover, the articles of the Louisiana Civil Code relating to leases have been held to serve primarily as gap-fillers for situations in which the lease contract is silent.  *See Schwegmann Family Trust No. 2 v. KFC Nat'l Mgmt. Co.*, 2007 WL 60971, at *2-*3 (E.D. La. Jan. 5, 2007) ("In a lease contract, the rules of the [Louisiana] Civil Code 'become applicable for *filling any gaps* in the parties' agreement and for determining its overall validity and effectiveness.'" (quoting La. Civ. Code art. 2668 cmt. (e))); *Tassin v. Slidell Mini-Storage, Inc.*, 396 So. 2d 1261, 1264 (La. 1981) ("[T]he codal articles and statutes defining the rights and obli[g]ations of lessors and lessees are not prohibitory laws which are unalterable by contractual agreement, but are simply intended to regulate the relationship between lessor and lessee when there is no contractual stipulation imposed in the lease.").

example is the claim for stock fraud asserted in *Admiral Insurance Co. See id.* The claim under Art. 2683, however, does result from the lease, and coverage is barred by the Contract Exclusion.

5

DPL brings an alternative claim for a variety of damages. DPL alleges:

> Alternatively, Plaintiff is entitled to damages for the cost of removing the defendants' personal property, for additional damages as appropriate, including the inability to lease the premises, to use the premises, for additional damage caused to the building because of the defendant[s'] refusal to remove their property, and any other damages pursuant to Civil Code Art. 2687.

P. Compl. Ex. E ¶ XX. As discussed above, *see supra* § IV(B)(3), the lease explicitly governs the removal of personal property at lease termination. To the extent this claim rests on the lessees' failure to remove personal property, it arises out of the lease and falls within the Contract Exclusion. *See supra* § IV(B)(3). To the extent the claim rests on an alleged violation of Art. 2687, it similarly arises out of the lease. Like Art. 2683, Art. 2687 is part of the Louisiana Civil Code governing leases. It provides that "[t]he lessee is liable for damage to the thing caused by his fault or that of a person who, with his consent, is on the premises or uses the thing." La. Civ. Code. Ann. art. 2687. The claim that DPL is entitled to damages because the lessees damaged the Leased Property by failing to remove their personal property directly

results from the lease because, absent the lease, the statute would provide no remedy.

Moreover, DPL's claim under Art. 2687 also clearly falls within the Property Damage Exclusion, which bars coverage of claims made against the insured for "damage to or destruction of any tangible property, including the loss of use thereof."  Corporate Ds. July 21, 2008 App. 11.  DPL alleges that the lessees are liable for damage to the Leased Property, including DPL's inability to lease and use the premises, caused by their failure to remove their personal property.  This claim clearly falls within the Property Damage Exclusion and the Contract Exclusion.

6

DPL's final claim is asserted against Ellis, not the lessees. DPL alleges that, as manager and supervisor of the lessees with respect to the Leased Property, "Ellis had a duty to ensure that the terms of the lease agreement were fulfilled by Defendants."  P. Compl. Ex. D ¶ XXIII.  It avers that "Ellis was aware of the contractual provision in the lease agreement requiring the defendant to carry adequate insurance coverage for the property and he intentionally refused and/or negligently refused to ensure that adequate coverage was obtained."  *Id.* ¶ XXIV.  DPL maintains that Ellis is liable for the damages that DPL suffered as a result of this breach of duty that Ellis owed to it.

Ellis contends that the Contract Exclusion does not bar

coverage of this claim because he is not a party to the lease and DPL does not allege that he breached a contractual duty. He argues that "this exclusion should be limited to claims against the insured for damages purportedly resulting from a breach of a contract to which the insured was a party." Ellis Resp. Br. 6. The court concludes that this interpretation of the Contract Exclusion is not reasonable.

The terms of the exclusion cannot be reasonably read to limit it to breach of contract claims. As discussed above, the exclusion bars coverage of claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" a contract, regardless of the legal theory that is asserted. The fact that the claim against Ellis could sound in tort does not change the fact that it is based on the lease. *See King*, 171 S.W.3d at 228-29 (holding that breach of fiduciary duty claim fell within contract exclusion because it related to contractual obligations). DPL alleges that Ellis failed to ensure that the lessees obtained adequate insurance. If Ellis owed such a duty *to DPL*, it arose directly from the lease. Defendants do not assert——much less establish——that Ellis had such a duty under common law or based on anything other than the lease.

This claim is very similar to the one at issue in *GE HFS Holdings*. There the court held that a contract exclusion very similar to the one at issue here barred coverage of a claim that an

insured negligently supervised services provided under a service contract. *GE HFS Holdings*, 520 F.Supp.2d at 228-29. The court cited *King* and held that, "[g]iving the exclusionary language its usual and ordinary meaning, the wrongful conduct at issue 'arose out of' and was 'attributable to' the Company's contractual relationship with [the claimant] and the obligations of the Company and/or the Insured to provide information thereunder." *Id.* at 228. Similarly, Ellis' alleged wrongful conduct arose out of the lessees' contractual relationship with DPL and the obligation to secure adequate insurance under the lease.

The Contract Exclusion also cannot be reasonably read, as Ellis urges, to apply only to claims involving a contract to which Ellis was a party.[14] The exclusion bars coverage of claims made against any insured based upon "*any* oral or written contract or agreement," Corporate Ds. July 21, 2008 App. 12 (emphasis added), not based only on a contract to which the specific insured is a party. DPL alleges that Ellis breached a duty "to ensure that the terms of the lease agreement were fulfilled" by the lessees. P. Compl. Ex. D ¶ XXIII. DPL is necessarily referring to an alleged duty *to DPL*.[15] This claim clearly arises out of the lease, and thus

---

[14]DPL actually alleges that Ellis, on behalf of the lessees, was a signatory to amendments to the lease.

[15]DPL specifically alleges that "[d]ue to this breach of duty owed *to the Plaintiff*, Ellis is personally liable for all damages sustained by Plaintiff as a result of his failure to ensure that the property was adequately insured." P. Compl. Ex. D ¶ XXV

falls within the Contract Exclusion.

7

Because the court concludes that the Contract Exclusion bars coverage of all the claims asserted in the *Orleans Parish Lawsuit*, it need not analyze whether the claims fall within the Property Damage Exclusion or the Insured v. Insured Exclusion.[16]

V

The claims asserted against the lessees in the *Federal Lawsuit* are essentially the same as those asserted against them in the *Orleans Parish Lawsuit*.[17] For the same reasons that the Contract Exclusion bars coverage of the claims asserted in the *Orleans Parish Lawsuit*, it bars coverage of all the claims asserted in the *Federal Lawsuit*. Accordingly, the court need not decide whether other exclusions also bar coverage.

VI

In the *Dallas County Lawsuit* defendant Sowell, on behalf of DOUS, brings a shareholder derivative action against Doussan III, Doussan Jr., Ellis, and DOUS. Sowell alleges, in relevant part,

_____

(emphasis added).

[16]Although the court need not decide whether other exclusions may also bar coverage, it has noted above that the claim alleging violation of La. Civ. Code Ann art. 2687 clearly falls within both the Property Damage Exclusion and the Contract Exclusion. *See supra* § IV(B)(5).

[17]In the *Orleans Parish Lawsuit* DPL also asserts the negligence claim against the lessees and the claim against Ellis.

that Doussan III, Doussan Jr., and Ellis, all of whom are or were allegedly directors or officers of DOUS, breached fiduciary duties owed to DOUS.  He also requests that DOUS reimburse him for the expenses incurred through pursuing this derivative action.  Welsh, another DOUS shareholder, has intervened in the *Dallas County Lawsuit*, alleging a breach of fiduciary duty by Ellis.

A

Carolina maintains that it has no duty to defend the *Dallas County Lawsuit* because coverage of the asserted claims is clearly barred by the plain language of the Insured v. Insured Exclusion. The Insured v. Insured Exclusion provides that Carolina is not liable for loss in connection with a claim made against any insured "by, on behalf of, or in the right of the Insured Entity, or by any Directors or Officers."  Corporate Ds. July 21, 2008 App. 11.  The exclusion does not apply, however, to "any derivative action by any security holder of the Insured Entity, but only if such Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any Insured or the Insured Entity."  *Id.*  Under the Policy, "Insured" is defined to include "any Director or Officer," *id.* at 9, which means "any past, present or future duly elected or appointed directors or officers of the Insured Entity," *id.* at 8.  Under the Policy's Additional Insured Entities endorsement, "Insured Entity" is defined to mean "the

Named Insured [Sowell LP] and any Subsidiary," and explicitly includes, *inter alia*, DOUS, GHI, and Union.  *Id.* at 24.

B

The Insured v. Insured Exclusion is unambiguous, and the court applies its plain language.  This conclusion is consistent with those of several courts, including this one, that have previously held that very similar exclusions are unambiguous.  *See Voluntary Hosps. of Am. v. Nat'l Union Fire Ins. Co.*, 859 F. Supp. 260, 263 (N.D. Tex. 1993) (Kendall, J.) ("Because the insured v. insured exclusion is reasonably susceptible of only one meaning and is therefore unambiguous, [the insurer] has demonstrated the applicability of that exclusion and therefore its entitlement to summary judgment."), *aff'd*, 24 F.3d 239 (5th Cir. 1994) (per curiam) (unpublished table decision); *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224, 1230 (11th Cir. 2005) (holding that language of similar insured v. insured exclusion was unambiguous).

In applying the plain meaning of the exclusion, the court concludes that the claims asserted in the *Dallas County Lawsuit* fall clearly within the exclusion and that Carolina has no duty to defend them.  The original claims in the *Dallas County Lawsuit* were brought against insureds (DOUS and Ellis) on behalf of an insured entity (DOUS).  The exclusion does not apply to shareholder derivative actions, but only if the claims are "instigated and

- 33 -

continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any Insured or the Insured Entity." Corporate Ds. July 21, 2008 App. 11. Although the *Dallas County Lawsuit* is a shareholder derivative action, it was brought by Sowell, an insured under the Policy. This means that the exception to the Insured v. Insured Exclusion is inapplicable, and the exclusion precludes coverage under the Policy. Although Welsh is not an insured, this fact does not take the lawsuit out of the Insured v. Insured Exclusion because his claims did not "continue[ ] totally independent of . . . any Insured." *Id.* Sowell's continued presence precludes Welsh's claims from falling within the exception to the exclusion.

C

Defendants, particularly Sowell and Ellis, make several arguments to support the contention that the Insured v. Insured Exclusion does not bar coverage of the *Dallas County Lawsuit*, but all of their arguments are inconsistent with the plain language of the exclusion and the Policy.

1

Defendants argue that there is no evidence establishing that Sowell is an "insured" under the Policy for purposes of the *Dallas County Lawsuit*. This contention fails because Sowell signed the Policy renewal form as the President of Sowell LP, the named

insured.[18]   The President of the named insured is clearly an
"insured" under the Policy.  *See* Corporate Ds. July 21, 2008 App.
9 (defining "Insured" to include "any Director or Officer").

2

Defendants next contend that the Insured v. Insured Exclusion
is inapposite because it must be applied separately to each insured
entity.  They argue that the exclusion applies to a claim "against
*any* Insured" that is brought by "*the* Insured Entity, or by any
Directors or Officers."  Sowell Resp. Br. 6.  Defendants reason
that because the exclusion refers to *the* insured entity, rather
than to *any* insured entity, the party bringing the claim must be
part of the same entity as the party against whom the claim is
brought.

Assuming *arguendo* that this argument has force, it is
misplaced in this case.  The Insured v. Insured Exclusion does not
apply in this case simply because Sowell, as an officer of Sowell
LP, is suing DOUS and its officers and directors.  Sowell is suing
DOUS and its officers *on behalf of* DOUS.

Moreover, the exclusion does not provide that the claim must
be brought by "*the* insured entity"; it states that the claim must
be brought "by, on behalf of, or in the right of the Insured
Entity."  Corporate Ds. July 21, 2008 App. 11.  The claims in the

_____

[18]Sowell is also a partner of Sowell LP and, at least
allegedly, a member of DOUS.

*Dallas County Lawsuit* were brought against DOUS and Ellis, an officer and director of DOUS, *on behalf of* DOUS. Thus defendants' argument that the exclusion must apply separately to each entity is unavailing.[19] As defendants acknowledge in their next argument, however, the fact that Sowell's claims are brought as a shareholder derivative action on behalf of DOUS brings the derivative action exception into play.

3

Defendants argue that the Insured v. Insured Exclusion is inapplicable to shareholder derivative lawsuits. They contend that because Sowell, a shareholder of DOUS, brings his claims in the *Dallas County Lawsuit* as derivative claims on behalf of DOUS, the Insured v. Insured Exclusion is inapplicable. Defendants' argument gives insufficient weight to the language of the derivative suit exception. The Insured v. Insured Exclusion is inapplicable to a

---

[19]Defendants also contend that the underlying rationale of the Insured v. Insured Exclusion, which they argue is to prevent collusion and abuse, supports the theory that the exclusion must apply separately to each insured entity. They argue that when, as here, unrelated entities litigate against each other there is no opportunity for collusion. This argument is misplaced. It bears emphasis that this is not a case where unrelated entities are litigating against each other. DOUS and Ellis are being sued on behalf of DOUS. A reasonable trier of fact would be unable to find from the summary judgment evidence that there is no opportunity for collusion. Furthermore, the purported rationale behind an exclusion is irrelevant when the plain language is unambiguous, as is the language of the Insured v. Insured Exclusion. *See Voluntary Hosps.*, 859 F. Supp. at 263; *Sphinx*, 412 F.3d at 1229-30 (refusing to consider rationale behind unambiguous insured v. insured exclusion).

derivative claim "only if such Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any Insured or the Insured Entity." *Id.* As defendants argue elsewhere, the use of the phrase "*any* Insured," as opposed to "*the* Insured," indicates inclusion of all insureds under the Policy. Because the derivative claims were brought by Sowell (an insured), the Insured v. Insured Exclusion applies and precludes coverage.

4

Finally, defendants argue that the intervention of Welsh, who is not an insured under the Policy, takes the case outside the scope of the Insured v. Insured Exclusion. They rely on *Federal Insurance Co. v. Infoglide Corp.*, 2006 WL 2050694 (W.D. Tex. July 18, 2006), which dealt with a very similar exclusion. Defendants quote the following conclusion from *Federal Insurance*: "[T]he proper construction of the [insured v. insured exclusion] is that the inclusion of an 'insured' as a plaintiff, where there are also plaintiffs who are not 'insureds,' does not bar coverage of the claim." *Id.* at *6. Defendants argue that, in light of this reasoning, the inclusion of Welsh as a plaintiff clearly means that coverage of the *Dallas County Lawsuit* is not barred by the Insured v. Insured Exclusion.

This contention misinterprets the holding of *Federal Insurance*

and overlooks the fact that Welsh's claim is a derivative claim.[20]
Although the quoted passage from *Federal Insurance* appears on its
face to support defendants' argument, when it is read in context,
it becomes clear that the passage does not apply to the facts of
the present case.  The *Federal Insurance* court held in the quoted
portion that the inclusion of an insured as a plaintiff does not
bar coverage of a claim when the other non-insured plaintiffs are
asserting *direct* claims.  *See id.* at *5-*6.  The part of the
opinion that immediately follows the quoted passage indicates that
the outcome would be different if the non-insured plaintiffs were
asserting *derivative* claims.  *See id.* at *6-*8.  When a plaintiff
is asserting a derivative claim, the derivative action exception to
the Insured v. Insured Exclusion applies.  The *Federal Insurance*
court then held that at least some of the claims asserted by the
non-insured plaintiffs were direct claims; thus they were not
excluded from coverage under the derivative action exception to the
exclusion.  *Id.* at *8.

In the *Dallas County Lawsuit* the non-insured plaintiff (Welsh)
asserts a *derivative* claim on behalf of DOUS.  Unless Welsh's claim
was instigated and continues totally independent of Sowell, which
is not the case, it falls within the Insured v. Insured Exclusion.

[20]The parties debate several other issues concerning *Federal
Insurance*, including the distinguishing factors between its facts
and those of *Sphinx*.  In light of the court's reading of *Federal
Insurance*, however, these issues are irrelevant to the outcome of
this case, and the court need not address them.

This is the only conclusion that the plain language of the exclusion allows, and it is also consistent with the holding of *Federal Insurance*.

Because all the claims asserted in the *Dallas County Lawsuit* clearly fall within the plain language of the Insured v. Insured Exclusion, coverage of the suit is barred.

## VII

In summary, no claims asserted in the Underlying Lawsuits are potentially covered under the Policy. Defendants have failed to show that the claims asserted in the *Jefferson Parish Lawsuit* potentially fall within the scope of the Policy. And Carolina has established that the plain language of the Contract Exclusion bars coverage of all the claims asserted in the *Orleans Parish Lawsuit* and the *Federal Lawsuit*. It has also established that coverage of the claims asserted in the *Dallas County Lawsuit* is barred by the plain language of the Insured v. Insured Exclusion. Because none of the claims asserted in the Underlying Lawsuits potentially falls within the Policy's coverage, Carolina has no duty to defend them as a matter of law. *See St. Paul Guardian*, 283 F.3d at 713.

## VIII

The parties dispute whether the issue of Carolina's duty to indemnify defendants is ripe for adjudication. Defendants argue that the duty to indemnify cannot be decided until the facts are developed in the Underlying Lawsuits. This is not the case,

however, when the court concludes that the insurer has no duty to defend the underlying litigation. The duty to defend is "broader than the duty to indemnify." *E & L Chipping*, 962 S.W.2d at 274. "Because the duty to defend is broader than the duty to indemnify or pay, a determination that there is no duty to defend means there is no duty to indemnify." *State Farm Fire & Cas. Co. v. Blythe*, 2001 WL 1148111, at *2 (N.D. Tex. Sept. 18, 2001) (Fitzwater, J.) (internal citations omitted); *see also Am. States Ins. Co.*, 133 F.3d at 368 ("Logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify."). The Supreme Court of Texas has held "that the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). In the instant case, the court has determined that there are no claims asserted in the Underlying Lawsuits that fall outside an exclusion. It therefore follows that Carolina can have no duty to indemnify. Accordingly, the court holds that the duty to indemnify issue is ripe for adjudication, and it concludes that Carolina has no duty to indemnify defendants in the Underlying Lawsuits.

The court now turns to the counterclaims that all defendants except Sowell assert against Carolina.[21]

Defendants first request a declaratory judgment that Carolina has a duty to defend and provide coverage to defendants in the Underlying Lawsuits.  Because the court has concluded that Carolina has neither obligation, defendants' request for a declaratory judgment is dismissed with prejudice.

Defendants also allege that, by failing to provide a defense and coverage to defendants in the Underlying Lawsuits, Carolina is liable for (1) breaching the Policy, (2) breaching its duty of good faith and fair dealing, (3) violating Chapters 541 and 542 of the Texas Insurance Code, and (4) damages under § 17.50 of the Texas Business & Commerce Code because it used deceptive insurance practices, in violation of Chapter 541.  Carolina argues that, because it had no duty to defend the Underlying Lawsuits, it is entitled to summary judgment dismissing all of these counterclaims.  The court agrees.  Carolina did not breach the Policy by failing to defend the Underlying Lawsuits, because it had no duty under the Policy to defend them.  And Carolina cannot be liable for breaching a duty of good faith and fair dealing or for violating Chapters 541

---

[21]Although the Corporate Defendants and Ellis answered Carolina's complaint separately, they assert identical counterclaims.  Sowell has not asserted any counterclaims against Carolina.

or 542 of the Texas Insurance Code because the Underlying Lawsuits are not covered under the Policy. *See, e.g.*, *Eilander v. Federated Mut. Ins. Co.*, 2001 WL 770986, at *4 (N.D. Tex. July 3, 2001) (McBryde, J.) (holding that insurer "cannot be liable for breach of the duty of good faith and fair dealing or violations of the . . . Insurance Code since no coverage existed"); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). Therefore, Carolina is entitled to summary judgment dismissing all of defendants' counterclaims.

* * *

For the reasons explained, the court grants Carolina's August 13, 2008 motion for summary judgment, and it denies the July 21, 2008 motions for partial summary judgment of the Corporate Defendants and Ellis. By judgment filed today, the court enters a judgment declaring that Carolina has neither a duty to defend nor a duty to indemnify defendants in the Underlying Lawsuits, and dismissing defendants' counterclaims with prejudice.

**SO ORDERED.**

February 17, 2009.

SIDNEY A. FITZWATER
CHIEF JUDGE